**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **Daniel Midden,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. 4:24-cv-1619** |
| **Ibotta, Inc.,** ) | |
| ) | |
| Serve at: ) | |
| ) | |
| **Registered Agent** ) | |
| Corporation Service Company ) | |
| 1900 W. Littleton Blvd. ) | **Jury Trial Demanded** |
| Littleton, CO 80120 ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Daniel Midden, by and through his undersigned attorney, alleges and states as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff, Daniel Midden, brings this action against Ibotta, Inc. ("Defendant") for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq*.; the American with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"); 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"); and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq.*  Defendant illegally discriminated and retaliated against Mr. Midden in violation of the ADA and MHRA, and retaliated against Mr. Midden for taking FMLA leave.  As a result, Mr. Midden has suffered significant damages.

## PARTIES

2.      Plaintiff, Daniel Midden, is an individual residing in Saint Louis, Missouri.

3.      Mr. Midden, was at all times relevant to this claim, an employee, as defined by the FMLA, ADA, and MHRA.

4.      Defendant is a Delaware corporation with its principal office located in Denver, Colorado.  At all times relevant to this claim, Defendant was an employer as defined by the FMLA, ADA, and MHRA.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617, in that this is a civil action arising under the FMLA and ADA.

6.      Furthermore, this Court also has supplemental jurisdiction over Plaintiff's related claims arising under state and local laws pursuant to 28 U.S.C. § 1367(a). Mr. Midden's state law claims under the MHRA form part of the same case or controversy under Article III of the Constitution and derive from a common nucleus of operative facts such that they would be expected to be tried in one proceeding.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## CONDITIONS PRECEDENT

8.      On or about November 21, 2023, Mr. Midden filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") based on his claims of disability discrimination, harassment, and retaliation. (A copy of the Charge is attached as **Ex. A**).

9.      The matter was assigned EEOC Charge No. 560-2024-00628. (A copy of the EEOC Charge is attached as **Ex. A**).

10.     On or about September 6, 2024, the EEOC issued Mr. Midden a Right to Sue Notice ("RTS"). (A copy of the RTS is attached as **Ex. B**).

11.     Mr. Midden's Complaint is filed within ninety days of the issuance of the EEOC RTS and within two years of the discrimination complained of.

12.     Mr. Midden has exhausted his administrative remedies against Defendant regarding his claims of disability discrimination, harassment and retaliation.

**FACTS**

13.     Mr. Midden began working for Defendant on or about February 18, 2020, as a Senior Director of Client Partnerships within Defendant's Consumer Package Goods ("CPG") Department.

14.     At the time of his termination, Mr. Midden was employed as the Vice President of Client Partnerships.

15.     At all times relevant to this lawsuit, Mr. Midden worked remotely from his home in Saint Louis, Missouri.

16.     Mr. Midden's department was tasked with cultivating relationships with businesses interested in running marketing campaigns for their products and/or services on Defendant's mobile app.

17.     In the year prior to taking FMLA leave, Mr. Midden worked for Defendant on a full-time basis and had worked more than 1,250 hours.

18.     Defendant employs more than 50 employees within a 75-mile radius of the office in which Mr. Midden reported.

19.     Upon information and belief, Defendant employs over 500 employees total.

20.     Throughout his tenure, Mr. Midden consistently met or exceeded performance expectations, as evidenced by his successful negotiation of high-value contracts, positive feedback from colleagues and supervisors, and excellent performance evaluations prior to taking FMLA leave in June 2023.

21.     Defendant recognized Mr. Midden's accomplishments and promoted him to the position of Vice President within the CPG Department in January of 2022.

22.     On June 5, 2023, Mr. Midden successfully negotiated the largest contract in Defendant's history.

23.     On June 6, 2023, Mr. Midden presented details of this achievement at a company-wide conference call upon request from the Defendant's Chief Revenue Officer.  At that time, Mr. Midden received commendations from multiple supervisors for his presentation.

24.     Specifically, Mr. Midden received a telephone call from the CEO of Ibotta, Inc., Bryan Leach, commending him on his achievement.

**Anxiety Diagnosis and FMLA Leave**

25.     On or about June 7, 2023, Mr. Midden requested sick leave from Defendant because he was experiencing extreme anxiety.

26.     Defendant provided Mr. Midden with sick leave.

27.     On or about June 12, 2023, Mr. Midden was diagnosed with anxiety, which caused him to suffer from insomnia and poor concentration.

28.     Having been diagnosed with anxiety, Mr. Midden is a qualified individual under the Americans with Disabilities Act of 1990, as amended.  As a result of Mr. Midden's disability, major life activities, such as sleep and the ability to concentrate, are substantially limited.

-4-

29.     Despite this limitation, Mr. Midden remained capable of performing the essential functions of his job with or without reasonable accommodation.

30.     Upon being diagnosed with anxiety, Mr. Midden informed his employer of his diagnosis, both verbally and in writing.

31.     In response to his diagnosis, Mr. Midden requested to take FMLA leave.

32.     Mr. Midden's request for FMLA leave was approved by Defendant and he began leave on June 12, 2023.

33.     On or about August 14, 2023, Mr. Midden returned to work from FMLA leave.

**Discrimination and Disparte Treatment Upon Return from FMLA Leave**

34.     After Mr. Midden returned from his FMLA leave, he was treated differently by his supervisors.

35.     On August 2, 2023, while he was on FMLA leave, Mr. Midden was contacted by the Senior Vice President for CPG, Anna Schroeder.  Mr. Midden was told that he would no longer report directly to Ms. Schroeder.  He would now exclusively report to another Vice President, Geoff McHale, who had moved into Mr. Midden's role as team leader while he was on leave.

36.     Upon information and belief, from the time of his return from FMLA leave until the time of his termination on October 5, 2023, Mr. Midden was the only Vice President working for Defendant who did not report directly to senior leadership.

37.     Mr. Midden also began to be excluded from leadership meetings with the Senior Vice President, Chief Revenue Officer, and the other Vice Presidents.  Some known examples of such exclusions include:

> a.      Weekly Vice President Leadership Meetings with the Senior Vice President and Chief Revenue Officer;

b.      Monthly Vice President Impact Report read-outs, with other Vice Presidents, the Senior Vice President and Chief Revenue Officer; and

c.      Annual 2024 Opportunities Planning Meeting with other Vice President, the Senior Vice President and Chief Revenue Officer.

38.     Upon information and belief, Mr. Midden was the only Vice President not in attendance at said meetings.

39.     This exclusion made it difficult for Mr. Midden to perform the duties of his job, as he often received critical information, late or not at all.

40.     Mr. Midden was also sequestered from interaction with prominent account contacts.

41.     On at least two occasions, Mr. Midden was excluded from meetings with client Kraft Heinz, one internal and one external, and only learned about the meeting after-the-fact.

42.     Prior to his leave, Mr. Midden was the main point of contact between Defendant and this particular account.  No explanation was given to Mr. Midden why he had been cut off from communication with the account.  Nothing had changed other than Mr. Midden's diagnosis and leave.

43.     On September 28, 2023, Mr. Midden met with his new supervisor, Geoff McHale, and told him that he was being left out of meetings that were vital to his role as Vice President and hindered his progress.

**Performance Review**

44.     On September 29, 2023, Mr. Midden received a mid-year review for the period of January 1, 2023, through June 31, 2023 (the same period in which Mr. Midden signed the largest contract in Defendant's history).  The review had been delayed from its originally scheduled date due to Mr. Midden's FMLA leave.

45.     The review was attended by Senior Vice President Anna Schroeder and Vice President Geoff McHale.  The meeting was also attended by Jessica Lokes from Defendant's Human Resources Department.

46.     During the meeting, Ms. Schroeder acknowledged that Mr. Midden had played a pivotal role in securing Defendant's largest account in the first half of 2023.  Despite this fact, Mr. Midden was informed that he had not met his performance expectations for that period.

47.     Ms. Schroeder raised allegations of poor performance against Mr. Midden.

48.     According to Ms. Schroeder, Mr. Midden:

   a.  Performed poorly in a companywide phone call on June 6, 2023;
   b.  Missed a deadline for the presentation entitled "Voice of the Client," on June 7, 2023; and
   c.  Missed a deadline on a presentation entitled, "How a Bill Becomes Law."

**Pretext - "Alleged Poor performance at June 6, 2023, Presentation"**

49.     On June 5, 2023, one day before the presentation at issue, Mr. Midden successfully signed the largest contract in company history.

50.     In response to this accomplishment, Chris Jensen, the Chief Revenue Officer for Defendant requested that Mr. Midden present on a company-wide call the following day on June 6, 2023, to share news of the win.

51.     Despite having less than a day to prepare, Mr. Midden happily agreed to present on the call.  Following the presentation, Mr. Midden received a call from the CEO of Ibotta, Bryan Leach, commending him on his achievement.

52.     Additionally, Mr. Midden received Slack messages and statements from his supervisor, Anna Schroeder, on the day of the presentation contradicting Defendant's claim that he performed poorly.

53.    Slack messages containing the statements "Well done!!" from Chief Revenue Officer Chris Jensen and Ms. Schroeder's immediate acknowledgment of a **"**Great job messaging!" not only challenge Defendant's assertion but also indicate a pervasive lack of consistency in assessing Mr. Midden's performance.

### Pretext – "Voice of the Client Slide Deck"

54.    Ms. Schroeder also claimed that Mr. Midden missed a deadline for the presentation entitled "Voice of the Client," on June 7, 2023.  Additionally, she claimed that work on the slide deck was subpar.

55.    In actuality, during the June 7, 2023, meeting, Mr. Midden presented the slide deck to Ms. Schroeder for review.  That actual deadline for the presentation was June 14, 2023.

56.    On June 7, 2023, Mr. Midden and Ms. Schroeder discussed potential changes to enhance the slides, which was a standard part of preparing any slide deck for a presentation. Notably, Ms. Schroeder made no indication during the meeting that Mr. Midden's work fell below the standards for his position.

57.    Mr. Midden didn't receive any emails stating that his work on the "Voice of the Client" project was substandard, nor was he informed about any deficiencies, at that time of his meeting with Ms. Schroeder on June 7, 2023.

58.    It was during his mid-year performance review after returning from FMLA leave that he learned about the alleged poor performance on the "Voice of the Client" slide deck.

59.    Additionally, Mr. Midden went on sick leave on June 7, 2023, and FMLA leave on June 12, 2023, so the deadline for the June 14, 2023, presentation occurred while he was on leave.

60.    Despite these facts, Defendant cited the "Voice of the Client" presentation as an example of Mr. Midden's poor performance.

**Pretext - "How a Bill Becomes a Law Presentation"**

61.     Also, during his mid-year review, Ms. Schroeder asserted that Mr. Midden failed to meet deadlines for a presentation called, "How a Bill Becomes a Law."

62.     Prior to taking leave, Mr. Midden was never told that the project was behind schedule or not meeting expectations.

63.     Once Mr. Midden was on leave, the project was reassigned to another Vice President.

64.     Upon returning from FMLA leave, Mr. Midden was not re-assigned to work on the "How a Bill Become a Law" presentation.

65.     On September 15, 2023, Mr. Midden received an email from another Vice President named Andy Cooper. Mr. Cooper informed Mr. Midden that he had given feedback on a first draft of "How a Bill Becomes a Law" while Mr. Midden was out on FMLA leave.

66.     It was agreed that Mr. Midden would take over the project again once a second draft had been completed.

67.     On September 28, 2023, during a meeting with Geoff McHale, Mr. Midden was asked about progress with the project called, "How a Bill Becomes Law."  At that time, Mr. Midden informed Mr. McHale that the project had been reassigned to another Vice President during his FMLA leave.

68.     On September 29, 2023, (the same day of his performance review) Mr. McHale stated in an email, "I was advised that you didn't meet the timeline required of the project."

69.     Mr. Midden responded again by stating that the project had been reassigned while he was on FMLA leave and had not been assigned back to him.

70. Despite not having been involved in the project since his medical leave, Mr. Midden was singled out for its problems.

71. Most of the instances cited by Ms. Schroeder and Mr. McHale at Mr. Midden's mid-year review had not been articulated to Mr. Midden at the time they had allegedly occurred, but were brought forth for the first time on September 29, 2023.

72. For instance, Anna Schroeder also referenced one of Mr. Midden's direct reports had not met expectations based on a proposal created in late June, 2023, and a meeting she attended in July, 2023.

73. Mr. Midden responded that both events occurred during his FMLA leave, and that his review was the first time he was made aware of any issues.

74. During his performance review, Mr. Midden informed his supervisors and the human resources officer that he thought he was being punished for taking FMLA leave.

75. After Mr. Midden complained about the discrimination he was experiencing, his supervisors and the human resources officer simply ignored him.

76. On October 2, 2023, Mr. Midden met with Chief Revenue Officer Chris Jensen. During that meeting, Mr. Midden again stated that felt that he was unfairly targeted during this mid-year review for taking leave.

77. Rather than investigating Mr. Midden's complaints of discrimination, Defendant decided to summarily fire Mr. Midden on October 5, 2023.

78. The purported reasons for Mr. Midden's termination—poor performance and failure to meet deadlines—were pretextual and inconsistent with the facts. These allegations relied on projects reassigned during Mr. Midden's medical leave, contradicted earlier positive performance evaluations, and ignored mitigating circumstances and factual inaccuracies raised by Mr. Midden.

79.     Furthermore, Defendant terminated Mr. Midden before giving him the opportunity to correct any of the performance improvements suggested at his evaluation.

80.     Defendant illegally discriminated against Mr. Midden in violation of the FMLA, ADA and, MHRA, and retaliated against him for taking FMLA leave.  As a result, Mr. Midden has suffered significant damages.

## <u>COUNT I</u>

**Retaliation in Violation of the Family Medical Leave Act**
**29 U.S.C. §2615(a)(2)**

81.     Mr. Midden repeats and realleges paragraphs 1 through 80 hereof, as if fully set forth herein.

82.     Defendant is an employer covered by the FMLA pursuant to 29 U.S.C. §2601 *et seq.* because it is a private business that employed fifty or more employees for each working day for at least twenty workweeks in the year prior to Mr. Midden's FMLA leave.

83.     Mr. Midden is an FMLA-eligible employee because he was employed by Defendant for over three years prior to requesting FMLA leave and had been employed by Defendant for over 1,250 hours in the twelve-month period prior to his request.

84.     Mr. Midden was entitled to FMLA leave because of his diagnosis of anxiety.

85.     In accordance with FMLA, Mr. Midden notified Defendant's human resources department on June 12, 2023, that he would need to take leave.

86.     Mr. Midden exercised his FMLA rights by taking FMLA leave from his job from June 12, 2023 through August 14, 2023.

87.     Mr. Midden was qualified for his position and had performed his job duties effectively prior to the acts complained of herein.

88. Mr. Midden suffered an adverse employment action in that he was subject to:

    a. Harassment;

    b. Reassignment;

    c. Demotion;

    d. Loss of Responsibility;

    e. Exclusion from necessary meetings and client interactions;

    f. Pretextual criticism; and

    g. Termination.

89. Defendant's disparate treatment of Mr. Midden began immediately after Mr. Midden returned to work from FMLA leave on August 14, 2023.

90. Defendant's decision to fire Mr. Midden on October 5, 2023, occurred only days after Mr. Midden complained of discrimination to his supervisors and Human Resources.

91. Defendant's alleged reason for terminating Mr. Midden's employment is pretextual and baseless. Defendant fired Mr. Midden because he took FMLA leave and complained of discrimination on October 5, 2023.

92. Defendant's conduct constitutes unlawful retaliation against Mr. Midden in violation of Mr. Midden's rights under the FMLA. 29 U.S.C. § 2615(a).

93. As a direct and proximate result of Defendant's wrongful acts and omissions, Mr. Midden has suffered and continues to suffer substantial losses, including past and future lost wages and benefits. Mr. Midden is also entitled to liquidated damages and attorneys' fees and costs, and other damages recoverable by law.

**WHEREFORE**, Mr. Midden respectfully requests the Court award Mr. Midden his past and future loss of wages and benefits, plus interest; liquidated damages pursuant to 29 U.S.C.

§2617(a)(1)(A)(iii); front pay (including benefits); all costs and reasonable attorney's fees incurred in connection with this action; and such additional relief as the Court deems just and proper.

## COUNT II

**Discrimination in Violation of the Americans with Disabilities Act**
**42 U.S.C. §§ 12181 *et seq.***

94.     Mr. Midden repeats and realleges paragraphs 1 through 93 hereof, as if fully set forth herein.

95.     Mr. Midden has a "disability" within the meaning of the ADA.

96.     Mr. Midden was a "qualified individual" able to perform the essential functions of his job.

97.     Mr. Midden's disability was a determinative factor in Defendant's decisions to adverse employment actions against him, in that he was subject to:

    a.  Harassment;

    b.  Reassignment;

    c.  Demotion;

    d.  Loss of Responsibility;

    e.  Exclusion from necessary meetings and client interactions;

    f.  Pretextual criticism; and

    g.  Termination.

98.     Defendant's stated reasons for taking said adverse employment actions are pretextual and serve to cover up its illegal and discriminatory acts.

99.     Mr. Midden suffered damages as a result of Defendant's unlawful and discriminatory actions, including emotional distress, past and future lost wages and benefits and the costs of bringing this action.

100.    Defendant intentionally violated Mr. Midden rights under the ADA with malice or reckless indifference, and, as a result, is liable for punitive damages.

**WHEREFORE**, Mr. Midden respectfully requests the Court award Mr. Midden his past and future loss of wages and benefits, plus interest; compensatory and punitive damages; front pay (including benefits); all costs and reasonable attorney's fees incurred in connection with this action; and such additional relief as the Court deems just and proper.

### <u>COUNT III</u>

**Retaliation in Violation of the Americans with Disabilities Act**
**42 U.S.C. §§ 12181 et seq.**

101.    Mr. Midden repeats and realleges paragraphs 1 through 100 hereof, as if fully set forth herein.

102.    Mr. Midden has a "disability" within the meaning of the ADA.

103.    Mr. Midden was qualified for his position when Defendant fired him.

104.    On September 29, 2023, Mr. Midden engaged in protected activity by complaining to his supervisors and human resources about his discriminatory treatment.

105.    Only days after Mr. Midden complained of disparate treatment based on his disability, Defendant summarily fired Mr. Midden.

106.    No investigation into Mr. Midden's allegations took place.

107.   Defendant's alleged reasons for terminating Mr. Midden's employment is pretextual and baseless.   Defendant fired Mr. Midden because he complained of disability discrimination on September 29, 2023.

108.   Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

109.   Mr. Midden has suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

110.   Defendant intentionally violated Mr. Midden's rights under the ADA with malice or reckless indifference, and, as a result, is liable for punitive damages.

**WHEREFORE**, Mr. Midden respectfully requests the Court award Mr. Midden his past and future loss of wages and benefits, plus interest; compensatory and punitive damages; front pay (including benefits); all costs and reasonable attorney's fees incurred in connection with this action; and such additional relief as the Court deems just and proper.

## COUNT IV

### Disability Discrimination in Violation of the MHRA
### Mo. Rev. Stat. § 213.010 *et seq.*

111.   Mr. Midden repeats and realleges paragraphs 1 through 110 hereof, as if fully set forth herein.

112.   The acts described above constitute disability discrimination and harassment in violation of the MHRA.

113.   Mr. Midden's disability was a determinative factor in Defendant's decisions to adverse employment actions against him, in that he was subject to:

a. Harassment;

b. Reassignment;

c. Demotion;

d. Loss of Responsibility;

e. Exclusion from necessary meetings and client interactions;

f. Pretextual criticism; and

g. Termination.

114. Defendant's stated reasons for taking said adverse employment actions are pretextual and serve to cover up its illegal and discriminatory acts.

115. As a direct and proximate cause of Defendant's actions and/or omissions, Mr. Midden has suffered, damages including past and future lost wages and benefits; a determinantal job record; career damage and diminished career potential; garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, increase anxiety, loss of enjoyment of life, and loss of sleep, and other non-pecuniary losses.

116. Defendant intentionally violated Mr. Midden's rights under the MHRA with malice or reckless indifference, and, as a result, is liable for punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count IV of his Complaint, for a finding that he has been subjected to unlawful disability discrimination prohibited by the MHRA; for an award of back pay, including lost commissions and other benefits, including interest; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expenses, and for such other and further relief the Court deems just and proper.

## COUNT V

### Retaliation in Violation of the MHRA
### Mo. Rev. Stat. § 213.010 *et seq.*

117.    Mr. Midden repeats and realleges paragraphs 1 through 116 hereof, as if fully set forth herein.

118.    Mr. Midden has a "disability" within the meaning of the MHRA.

119.    Mr. Midden was qualified for his position when Defendant fired him.

120.    On September 29, 2023, Mr. Midden engaged in protected activity by complaining to his supervisors and human resources about his discriminatory treatment.

121.    Only days after Mr. Midden complained of disparate treatment based on his disability, Defendant summarily fired Mr. Midden.

122.    No investigation into Mr. Midden's allegations took place.

123.    Defendant's alleged reasons for terminating Mr. Midden's employment are pretextual and baseless.  Defendant fired Mr. Midden because he complained of disability discrimination on September 29, 2023.

124.    Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

125.    Mr. Midden has suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

126.    Defendant intentionally violated Mr. Midden's rights under the MHRA with malice or reckless indifference, and, as a result, is liable for punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendant on Count V of his Complaint, for a finding that he has been subjected to unlawful disability discrimination and

harassment prohibited by the MHRA; for an award of back pay, including lost commissions and

other benefits, including interest; for an award of compensatory and punitive damages; for his

costs expended; for his reasonable attorneys' and expenses, and for such other and further relief

the Court deems just and proper.


Respectfully submitted,


*/s/  Ross A. Davis*
Ross A. Davis, Mo Bar No. #62836
Law Office of Ross A. Davis, LLC
7733 Forsyth Blvd., Suite 1100
Clayton, MO 63105
Ph:  (314) 858-5777
Fax: (314) 450-8269
rdavis@rossdavislaw.com

*Attorney for Plaintiff*
*Daniel Midden*